IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSE ELIZONDO and RANDEE                    Case No. 6:15-cv-1853-AA
ELIZONDO,                                           OPINION AND ORDER

        Plaintiffs,

    vs.

CITY OF JUNCTION CITY; MIKE
CAHILL, Mayor of Junction
City; RANDY NELSON, City
Council President; and BILL
DEMARCO, HERB CHRISTENSEN,
JIM LEACH, KAREN LEACH, and
STEVEN HITCHCOCK, City Council
Members,

        Defendants.

Marianne G. Dugan
Attorney at Law
259 E. 5th Avenue, Suite 200-D
Eugene, OR 97401
    Attorney for plaintiffs

Louis L. Kurtz
Louis L. Kurtz, P.C.
1050 Willagillespie Road, Suite 5
Eugene, OR 97401
    Attorney for defendants

PAGE 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiffs Jesse and Randee Elizondo seek a preliminary injunction barring defendants the City of Junction City ("City"); Mike Cahill, the mayor of Junction City; and Bill DeMarco, Herb Christensen, Jim Leach, Karen Leach, and Steven Hitchcock, members of the City Council for the City of Junction City ("City Council"), from cutting down a tree growing in front of plaintiffs' residential property. Because plaintiffs have not demonstrated a fair chance of success on the merits, the motion for a preliminary injunction is denied.

<u>BACKGROUND</u>

Plaintiffs are a husband and wife who own real property at the corner of 6th Avenue and Kalmia Street in Junction City, Oregon. A large tree ("the tree") sits in front of plaintiffs' house and yard, within the City's right-of-way for sidewalks. Plaintiffs allege they have maintained the tree for the past 25 years. They assert the tree increases the value of their property, provides shade and aesthetic benefit to the neighborhood, and serves as a habitat for migratory birds and other wildlife.

According to the City Administrator, the City is engaged in the Safe Routes to School Project ("the Project"). The Project involves modifying streets in the vicinity of Junction City High School to comply with Americans with Disabilities Act ("ADA") and other safety standards. Plaintiffs' property and the tree are

PAGE 2 - OPINION AND ORDER

within the area of the Project.  Among other improvements, the plan calls for the construction of ADA-compliant ramps at the intersection of 6th Avenue and Kalmia Street.  As explained at a June 1, 2015 meeting of the City Council's Sewer and Streets Committee ("Streets Committee"), there are two types of ADA-compliant ramps: standard and bulb-out.  Bulb-out ramps, in which the sidewalk and curb curve out into the street, "are more aesthetically pleasing and promote traffic control but they are more expensive."  Doc. 20-5 at 2.  The Streets Committee voted to install standard ramps uniformly throughout the Project area.

It is undisputed the root system of the tree has severely damaged the surrounding curb and sidewalk.  Defendants assert the ADA-compliant ramp cannot be constructed without removing the tree.  Accordingly, the City determined the tree should be cut down as part of the Project.

Plaintiffs oppose the City's plan to destroy the tree.  Their efforts to save the tree have included direct communication with City staff and City Council members; paying for a complete evaluation of the tree from Sperry Tree Care, including tomography (similar to an MRI), to assess the tree's health; obtaining a second evaluation of the tree from a certified arborist; and gathering signatures on a "Help save our tree petition," Doc. 20 Ex. J.  Plaintiffs' efforts have been covered by the local press. Kelly Anderson, <u>Junction City man fights efforts to remove tree</u>

PAGE 3 - OPINION AND ORDER

from corner (KVAL television broadcast Oct. 14, 2015); Saul
Hubbard, Root of the Problem:  Junction City man tries to save
massive tree from the saw, The Register-Guard, Oct. 7, 2015, at B1.

Plaintiffs assert the City could use at least three
alternative ramp designs, none of which would require destroying
the tree.  First, plaintiffs propose the City accommodate the tree
with a bulb-out.  Second, plaintiffs have offered to give the City
a right of way over a portion of their yard so the sidewalk and
ramp could be built around the side of the tree closest to their
house.  Finally, plaintiffs suggest the City could build the ramp
over the top of the tree roots as planned by taking some material
off the top of the roots, covering them with sand and gravel, and
constructing the ramp on top.  Plaintiffs acknowledge these options
would cost the City more money than the standard ADA ramp and have
offered to help cover the cost difference.  Plaintiffs allege the
City has permitted other property owners in similar situations to
"salvage" their trees by building bulb-out sidewalks.  Pl.'s Mot.
Prelim. Inj. at 3.

The City Council and the Streets Committee considered
plaintiffs' arguments at a series of meetings in the summer of
2015.[1]  The matter was taken up at the June 1, 2015; July 6, 2015;

_____

[1]Although only the minutes of the June 1, 2015 Streets
Committee meeting are part of the record, the Court takes
judicial notice of the minutes of the other meetings as "not
subject to reasonable dispute because [they] . . . can be
accurately and readily determined from sources whose accuracy

PAGE 4 - OPINION AND ORDER

and August 3, 2015 meetings of the Streets Committee.  Plaintiff
Jesse Elizondo spoke at the July 6 meeting, and the Committee
discussed the tree evaluations obtained by plaintiffs and various
options for ramp design at the meetings.  The full City Council
addressed the matter at the August 25, 2015 meeting.  Ultimately,
the City Council decided to move forward with cutting down the
tree, citing public safety concerns.

Although not mentioned by defendants in their briefs to this
Court, one such safety concern appears to be that the tree blocks
visual clearance at the intersection.  City rules require drivers
and pedestrians at an intersection have a clear view 30 feet to the
left and to the right.  Plaintiffs contend this justification is
pretextual, asserting there is a clear view from the stop sign in
front of their house.  They further allege the City generally does
not enforce this requirement, arguing nearly every corner in the
vicinity of their home contains a visual obstruction "at least as
serious" as the tree.  Pl.'s Mot. Prelim. Inj. at 4.

---

cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); <u>see</u>
<u>Nasrawi v. Buck Consultants, LLC</u>, 713 F. Supp. 2d 1080, 1083 n.4
(E.D. Cal. 2010) (taking judicial notice of a public agency's
board meeting minutes).  The minutes are available through the
City's website, organized by date, at
http://www.junctioncityoregon.gov/index.asp?Type=B_LIST&SEC={949C
B97C-4881-4C03-BE23-3E16203FA13D} (City Council) and
http://www.junctioncityoregon.gov/index.asp?Type=B_BASIC&SEC={132
BADE7-3F88-4D1A-8507-D3A4D5BD0883}&DE={5B16E739-FB66-4EED-BC16-4D
BB2E89C95D} (Streets Committee).

PAGE 5 - OPINION AND ORDER

The tree was scheduled to be cut down on October 7, 2015.  On September 30, 2015, plaintiffs filed this action in federal court, asserting defendants' plan to destroy the tree violates the Takings Clause, Due Process Clause, and Equal Protection Clause of the United States Constitution, as well as the Takings Clause of the Oregon Constitution.  That same day, plaintiffs filed a motion seeking a temporary restraining order ("TRO") and preliminary injunction preventing defendants from cutting down the tree during the pendency of this litigation.  The court granted plaintiffs' motion for a TRO on October 6, 2015, and heard oral argument on the motion for a preliminary injunction on December 11, 2015.

STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat'l Resources Def. Council, 555 U.S. 7, 20 (2008).  Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  For example, a preliminary injunction is appropriate if "serious questions going to the merits [are] raised and the balance of hardships tips

PAGE 6 - OPINION AND ORDER

sharply in [plaintiffs'] favor," so long as the plaintiff also makes a showing on the other two prongs of the Winter test. Id. (citing Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)). A plaintiff has raised "serious questions" going to the merits if she shows at least a "fair chance of success" and points to "substantial, difficult, and doubtful" inquiries requiring "more deliberative investigation." Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988).

DISCUSSION

If the City cuts down the tree, plaintiffs will suffer irreparable harm, because "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable[.]" See All. for the Wild Rockies, 632 F.3d at 1135 (quoting Lands Council v. McNair, 537 F.3d 981, 1004 (9th Cir. 2008)) (internal quotation marks omitted). This strong showing on one of the Winter prongs prompts the Court to ask whether plaintiffs have shown at least a "fair chance of success" on any of their claims. Republic of the Philippines, 862 F.2d at 1362.

I. Due Process Claim

Plaintiffs contend defendants' decision to cut down the tree deprives them of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. See U.S. Const. amend. XIV § 1 ("No State shall . . . deprive any

person of life, liberty, or property, without due process of law"). A procedural due process claim requires a threshold showing of a life, liberty, or property right. <u>Brittain v. Hansen</u>, 451 F.3d 982, 991 (9th Cir. 2006). Defendants' sole argument in opposition to plaintiff's motion for a preliminary injunction is that plaintiffs have failed to make such a threshold showing.

Plaintiffs initially alleged they owned the tree. In response, defendants introduced (1) a copy of the plat of Washburne and Milliorn's Addition, the area in which plaintiffs' property and the tree are located, Doc. 12-1 at 1, and (2) a copy of the warranty deed by which plaintiffs acquired their property, Doc. 12-2 at 1. Defendants also submitted the declaration of K. Jay Pannell ("Pannell"), a professional land surveyor. Pannell reviewed the plat and warranty deed, performed a survey, and concluded "the entire trunk of the tree is 8 feet more or less outside the boundary of [plaintiffs'] property" and "the entire trunk of the tree is well within the right-of-way for 6th Avenue." Doc. 13 & Ex. 1. In Oregon, properly dedicated and platted streets are public property. <u>See Ford v. Graham</u>, 209 P. 613, 613 (Or. 1922) (affirming judgment for plaintiff who purchased a piece of real property, a house and fruit trees, then discovered part of the house and all of the trees were not located on the purchased property but on a "properly platted and dedicated" but undeveloped street); <u>City of Eugene v. Garrett</u>, 170 P. 731, 731 (Or. 1918)

PAGE 8 - OPINION AND ORDER

(where a street has been dedicated, and the plat and dedication "duly recorded," the entire platted road is public property and the city is "trustee of streets for the use of the public"). Although plaintiffs do not concede the accuracy of Pannell's survey, they have not introduced any evidence to suggest the tree is actually on their property. Accordingly, for the purposes of this motion, the Court assumes plaintiffs do not own the tree.

Plaintiffs, however, also assert a second type of property interest in the tree. They argue even if the tree is on public property, they have "a right in the nature of an easement to grow and maintain a shade tree in the street in front of their premises, and may maintain an action against a wrongdoer for injuring the tree, or removing it." 10A McQuillen, The Law of Municipal Corporations, § 30:65 (3d ed. 1990). The Junction City Municipal Code recognizes such a property interest. It specifically addresses "street trees," defined as "trees, shrubs, or bushes and all other woody vegetation on public rights-of-way within the City." Junction City Municipal Code § 12.35.030. Adjacent property owners are responsible for street tree maintenance and are liable for damage caused by failure to properly prune and otherwise care for street trees. Id. § 12.35.070(B)-(C). The City has the authority to assess adjacent property owners for costs associated with pruning or removing improperly maintained street trees. Id. § 12.35.080(C).

PAGE 9 - OPINION AND ORDER

The City retains the right to "remove, or cause or order to be removed, any tree or part thereof which is in an unsafe condition or which by reason of its nature is injurious to . . . public improvements[.]" Id. § 12.35.070(F). This tracks the common law, which generally makes an abutting owner's right to maintain a shade tree subject to "the superior rights of the public by its proper authorities to improve and maintain the streets for public purposes[.]" 10A McQuillen, The Law of Municipal Corporations, § 30:65 (3d ed. 1990). As a general rule, "[i]t is well settled that a municipality . . . may remove trees, when necessary, as against the objection of the abutting owner, without compensation, in connection to making improvements on the street[.]" Id. § 30:66. However, "a municipality cannot cut down or remove a tree arbitrarily where there is no real necessity or good reason for so doing, as against the objections of the abutting owner." Id. § 30:66.

Defendants argue, in essence, that the City has an unconditional right to remove the tree at any time and for any reason. See Def.'s Mem. Opp. Prelim. Inj. at 4 (arguing it is "irrelevant" whether the tree could be salvaged through alternative ramp/sidewalk designs, whether the tree or other nearby trees block visibility at the intersection, and whether "plaintiffs were provided with a meaningful opportunity to challenge the decision to remove the tree"). Such an unconditional right is inconsistent

with the common law and the code provisions set forth above, neither of which grants the City an unfettered right to remove the tree. Rather, as relevant here, the City's right to cut down the tree hinges on whether the tree is, as defendants assert, "injurious to . . . public improvements." Junction City Municipal Code § 12.35.070(F). Municipalities are due considerable deference in making such decisions, but that does not extinguish adjacent owners' property interest in street trees. I find plaintiffs have adequately demonstrated a property interest in the tree.

The next step of the inquiry is determining whether plaintiffs have demonstrated a "fair chance," Republic of the Philippines, 862 F.2d at 1362, that the City failed to afford them adequate process, which consists of notice and "an opportunity to be heard . . . at a meaningful time and in a meaningful manner." Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (citation and quotation marks omitted). It is undisputed plaintiffs knew about the City's plan to cut down the tree. See Espinosa v. U.S. Aid Funds, Inc., 553 F.3d 1193, 1203 (9th Cir. 2008) (actual notice satisfies notice component of procedural due process). Thus, the question is whether plaintiffs were afforded an opportunity to be heard.

Due process does not always require an adversarial or otherwise formal hearing. Buckingham v. Sec'y of U.S. Dep't of Agric., 603 F.3d 1073, 1082-83 (9th Cir. 2010); see also Memphis Light, Gas, & Water Div. v. Craft, 436 U.S. 1, 16 n.17 (1978) ("The

PAGE 11 - OPINION AND ORDER

opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a due process hearing in appropriate circumstances.") The core requirement is to give the individual the "opportunity to speak up in his own defense" while the government "listen[s] to what he has to say," because "fairness rarely can be obtained by secret, one-sided determination of facts decisive of rights." Fuentes, 407 U.S. at 81. Under some circumstances, notice and an opportunity to be heard at a public meeting may satisfy the requirements of procedural due process. Littlefield v. City of Afton, 785 F.2d 596, 603 (8th Cir. 1986), overruled on over grounds as recognized by Bituminous Materials, Inc. v. Rice Cnty., Minn., 126 F.3d 1068, 1070 (8th Cir. 1997).

Here, plaintiffs were able to argue their case to City staff, who presented plaintiffs' concerns and various options at three meetings of the Streets Committee and one meeting of the full City Council. Plaintiff Jesse Elizondo spoke directly to the Streets Committee during the July 6, 2015, meeting. The Streets Committee and City Council considered evidence obtained by plaintiffs regarding the tree's health and alternative ramp designs. Although the City Council did not ultimately adopt any of plaintiffs' proposed alternatives, plaintiffs had a meaningful opportunity over the course of several months and multiple public meetings to be heard. Under the circumstances, this process was constitutionally

PAGE 12 - OPINION AND ORDER

adequate. Accordingly, plaintiffs have not demonstrated the requisite likelihood of success on their due process claim.

II. Takings Claims

Plaintiffs assert destruction of the tree would violate the Takings Clauses of the United States and Oregon Constitutions, which prohibit the government from taking private property for public use without just compensation. See U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); Or. Const. Art. I, § 18 ("Private property shall not be taken for public use . . . without just compensation[.]"); see also Or. Dep't of Agric., 478 F.3d 985, 1002 n.16 (9th Cir. 2007) ("The Takings Clause applies against the states through the Fourteenth Amendment."); Hoeck v. City of Portland, 57 F.3d 781, 787 (9th Cir. 1995) ("Oregon law is identical to Fifth Amendment physical takings law." (quotation marks omitted)).

Plaintiffs' takings claims do not warrant injunctive relief, preliminary or otherwise. "Equitable relief is not available to enjoin an alleged taking . . . when a suit for compensation can be brought against the sovereign subsequent to the taking." Ruckelshaus v. Mosanto Co., 467 U.S. 986, 1016 (1984); see also Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envt'l Protection, 560 U.S. 702, 741 (2010) (Kennedy, J., concurring) ("It makes perfect sense that the remedy for a Takings Clause violation

PAGE 13 - OPINION AND ORDER

is only damages, as the Clause does not proscribe the taking of property, it proscribes taking without just compensation." (internal quotation marks omitted)).

### III. Equal Protection Claim

Finally, plaintiffs assert defendants' decision to destroy the tree violates their right to equal protection under the Fourteenth Amendment. See U.S. Const. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.") To succeed on their "class of one" claim, plaintiffs must demonstrate defendants "(1) intentionally (2) treated [plaintiffs] differently than other similarly situated property owners, (3) without a rational basis." Gerhart v. Lake Cnty., Mont., 637 F.3d 1013, 1022 (9th Cir. 2011). The plaintiff bears the burden to prove each of these elements. Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000) (per curiam). Although there is no requirement a plaintiff demonstrate a defendant was "motivated by subjective ill will," Gerhart, 637 F.3d at 1022, rational-basis review is an "exceedingly low level of judicial scrutiny." Aleman v. Glickman, 217 F.3d 1191, 1201 (9th Cir. 2000). A district court applying rational basis review does not have "license . . . to judge the wisdom, fairness, or logic" of a municipality's choices. Id. at 1200 (quotation marks omitted). Moreover, the government has no obligation to justify its decision; rather, the plaintiff bears the heavy burden to "negative every

PAGE 14 - OPINION AND ORDER

conceivable basis which might support [the differential treatment]." Id. at 1201 (quotation marks omitted).

Plaintiffs have failed to satisfy this demanding requirement. It is undisputed the City's decision to cut down the tree is intentional. However, plaintiffs have failed to show a "fair chance" they will succeed on the other two prongs of their class of one claim. Republic of the Philippines, 862 F.2d at 1362. The questions whether plaintiffs are similarly situated to other adjacent property owners whose trees have not been cut down and whether the City has a rational basis for the differential treatment are really two sides of the same coin, because a holding two groups are not similarly situated "amounts to a determination that the state has a constitutionally sufficient reason for treating the groups differently." Seeboth v. Allenby, 789 F.3d 1099, 1105 (9th Cir. 2015).

There are at least two rational bases for the differential treatment apparent from the record. First, as noted, plaintiffs introduced evidence the City has constructed bulb-outs in the past to avoid cutting down trees. Plaintiffs also introduced evidence showing trees at nearby intersections block visual clearance. But plaintiffs have not identified any other property owners whose trees pose both problems, i.e., require an alternate construction design to accommodate their roots and are located at an

intersection, thus blocking visual clearance.[2]  Even if the City made exceptions for other trees in the past, it rationally may decline to expend City resources to make an exception for a tree that poses a safety hazard.  Put another way, plaintiffs have not identified similarly situated individuals who have been treated differently by the City.

Second, in the newspaper article submitted by plaintiffs, Council members expressed a desire to keep the intersection and street aesthetically uniform.  Saul Hubbard, <u>Root of the Problem: Junction City man tries to save massive tree from the saw</u>, The Register-Guard, Oct. 7, 2015, at B1.  Even if plaintiffs paid the extra cost for a bulb-out or other special ramp for their tree, the City would then be forced to pay the extra costs for all other ramps at the intersection in order to maintain uniformity.  Thus, aesthetics and cost provide a second rational reason for the decision to cut down this tree while leaving trees on other streets standing.  <u>See</u> <u>Clark v. City of Los Angeles</u>, 650 F.2d 1033, 1039 (9th Cir. 1981) (approving aesthetics as a possible rational basis for a zoning ordinance).  Again, this renders plaintiffs' situation dissimilar from that of other adjacent property owners whose street trees have been saved through bulb-outs or been left standing at

---

[2] Asserting the visual-clearance argument is entirely pretextual, plaintiffs introduced a photo purporting to show the tree does not block visual clearance at the intersection.  For the limited purposes of ruling on this motion, I find the tree does block visual clearance.

PAGE 16 - OPINION AND ORDER

intersections.    Thus,  plaintiffs  have  not  made  the  requisite showing of success on their equal protection claim.[3]

<u>CONCLUSION</u>

Plaintiffs' motion for a preliminary injunction (doc. 5) is DENIED.  The temporary restraining order in this case is VACATED.

IT IS SO ORDERED.

Dated this ⫽ of February 2016.

_____
Ann Aiken
United States District Judge

---

[3] Because plaintiffs did not meet the likelihood of success showing on any of their claims, it is unnecessary to address the remaining two <u>Winter</u> factors.

PAGE 17 - OPINION AND ORDER