IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JESSE ELIZONDO and RANDEE ELIZONDO,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF JUNCTION CITY; MIKE CAHILL, Mayor of Junction City; RANDY NELSON, City Council President; BILL DeMARCO, City Council Member; HERB CHRISTENSEN, City Council Member; JIM LEACH, City Council Member; KAREN LEACH, City Council Member; and STEVEN HITCHCOCK, City Council Member,<br><br>Defendants. | Case No. 6:15-cv-01853-AA<br>OPINION AND ORDER |

AIKEN, Judge:

In this action, plaintiffs Jesse and Randee Elizondo sued defendants the City of Junction City ("City"); Mike Cahill, the mayor of Junction City; and various members of the City Council for the City of Junction City ("City Council"), seeking to enjoin defendants from cutting down a century-old tree growing front of plaintiffs' residential property. Plaintiffs assert that defendants' decision to cut down the tree violates their civil rights under the United States and

Oregon Constitutions. Defendants now move for summary judgment. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

Plaintiffs are a husband and wife who own real property at the corner of 6th Avenue and Kalmia Street in Junction City, Oregon. Elizondo Decl. ¶ 2 Sept. 30, 2015 (doc. 7). A large bigleaf maple tree ("the tree") sits in front of plaintiffs' house and yard, within the City's right-of-way for sidewalks. *Id.* ¶ 3; Kurtz Decl. Ex. 6 Mar. 23, 2017 (doc. 52). The tree is outside the boundary of plaintiffs' property.[1] Pannell Decl. ¶ 5 & Ex. 1 Oct. 16, 2015 (doc. 55). It is eighty feet tall and more than one hundred years old. Elizondo Decl. ¶¶ 3, 8 Sept. 30, 2015; Elizondo Decl. ¶ 2 & Ex. H Nov. 2, 2015 (doc. 20). Plaintiffs have maintained the tree for the past twenty-five years, including by performing maintenance at the City's request. Elizondo Decl. ¶ 7 Sept. 30, 2015. Plaintiffs assert the tree "by itself" has value to them, and that it also increases the value of their property, provides shade and aesthetic benefit to the neighborhood, and serves as a habitat for migratory birds and other wildlife. *Id.* ¶¶ 9–11.

According to the City Administrator, the City is engaged in the Safe Routes to School Project ("the Project"). Knope Decl. ¶ 2 Oct. 15, 2015 (doc. 54). The Project involves modifying streets in the vicinity of Junction City High School to comply with Americans with

---

[1] Plaintiffs continue to allege that the tree is on their property, within the boundary described in their deed. Elizondo Decl. ¶ 6 Sept. 30, 2015. However, evidence submitted by the City shows that plaintiffs' deed describes their property by reference to a plat map and does not contain a metes and bounds description. Forstrom Decl. ¶ 5 & Ex. 2 Oct. 16, 2015 (doc. 53). The plat map does not establish whether the tree is located within the boundaries of plaintiffs' property. *Id.* Ex. 1. However, the City obtained a survey to answer that question and submitted an expert declaration stating that the "entire trunk of the tree" is approximately eight feet outside of plaintiffs' property. Pannell Decl. ¶ 5. Plaintiffs have not submitted a contrary expert opinion, survey, or any other proof to contradict defendants' evidence on the tree's location. There is therefore no question of material fact that the tree is located outside the boundaries of plaintiffs' lot.

Disabilities Act ("ADA") and other safety standards. *Id.* Among other improvements, the plan calls for the construction of ADA-compliant ramps at the intersection of 6th Avenue and Kalmia Street, where plaintiffs' property and the tree are located. *Id.* The tree poses an obstacle to construction of the ramps because its root system has severely buckled the surrounding curb and sidewalk. *Id.* ¶ 4 & Exs. 1–7. The City notified plaintiffs that it intended to remove the tree to permit construction of the ramps. *Id.* ¶ 6.

Plaintiffs have persistently and vigorously opposed the City's plan to destroy the tree. In an efforts to save the tree, they have lobbied City staff and City Council members; testified at meetings of the City Council's Sewer and Streets Committee ("Streets Committee"); paid for a complete evaluation, including tomography (similar to an MRI), to assess the tree's health; obtained a second evaluation of the tree from a certified arborist; nominated the tree for "Oregon Champion Tree" status, and gathered signatures on a "Help save our tree petition." Elizondo Decl. ¶¶ 12, 13, 17, & Ex. A Sept. 30, 2015; Elizondo Decl. Exs. I & J Nov. 2, 2015; *see also* Kelly Anderson, *Junction City man fights efforts to remove tree from corner* (KVAL television broadcast Oct. 14, 2015); Saul Hubbard, *Root of the Problem: Junction City man tries to save massive tree from the saw*, The Register-Guard, Oct. 7, 2015, at B1.

In August 2015, at the recommendation of the Streets Committee, the City Council decided to cut down the tree. Kurtz Decl. Ex. 5 Mar. 23, 2017. The Streets Committee reached its recommendation after devoting time at a series of three public meetings to consider what to do about the tree, including taking evidence from plaintiffs. *Id.* Ex. 2–4. City Council members cited various concerns in support of their decision, including the damage to the sidewalk, *id.* Ex.

4; the higher cost alternative ramp designs that could allow the tree to remain standing,[2] *id.* Ex. 2; the tree's health and life expectancy, *id.*; a desire for a uniform type of ADA ramp on all four corners of the intersection, *id.*; the possibility of future improvements to the street, including the addition of bike lanes, *id.*; and the need for visual clearance at the intersection for vehicles and pedestrians, *id.* Ex. 6.

Plaintiffs allege that none of defendants' justifications for cutting down the tree are supported by the evidence. Regarding the undisputed damage to the sidewalk and curb, plaintiffs proposed three alternate ramp designs that would be ADA-compliant while saving the tree. In addition to suggesting use of the bulb-out ramps considered by the Streets Committee, plaintiffs introduced an expert declaration stating that an ADA ramp could be constructed without harming the tree by taking some material off the top of the roots, covering them with sand and gravel, and building the ramp on top. Harper Decl. ¶ 3 (doc. 19). Finally, plaintiffs proposed giving the City part of their property so a sidewalk could be built around the side of the tree closest to their house. Elizondo Decl. ¶ 15 Sept. 30, 2015. Acknowledging that these alternative designs would cost more than cutting down the tree and building standard ADA ramps, plaintiffs offered to help pay the difference. *Id.* Plaintiffs introduced evidence that the City has approved the construction of bulb-outs around other trees, albeit on straight stretches of road rather than at intersections. Elizondo Decl. ¶ 14 & Exs. C–E Sept. 30, 2015.

With respect to defendants' concerns about visual clearance, plaintiffs submitted a photo and a video purporting to show that the tree does not actually block visibility at the intersection.

---

[2] As explained at a June 1, 2015 meeting of the City Council's Sewer and Streets Committee ("Streets Committee"), there are two types of ADA-compliant ramps: standard and bulb-out. Bulb-out ramps, in which the sidewalk and curb curve out into the street, "are more aesthetically pleasing and promote traffic control but they are more expensive." Elizondo Decl. Ex. M at 2 Nov. 2, 2015. The Streets Committee voted to install standard ramps uniformly throughout the Project area. *Id.*

PAGE 4 – OPINION AND ORDER

*Id.* Ex. F; Elizondo Decl. Ex. L Nov. 2, 2015. They also allege that the City generally does not enforce the visual-clearance provision of the City code. Plaintiffs support that allegation with photos of trees located at other intersections near their property, asserting those trees create "visual obstruction at least as serious as our tree[.]" Elizondo Decl. Ex. G Sept. 30, 2015. They also state that although there have been at least thirty visual-clearance complaints made to the City since 2002, none of the other trees have been cut down. Dugan Decl. ¶ 2 & Ex. A Apr. 17, 2017.

After the City Council announced its decision, plaintiffs filed this action in federal court, asserting defendants' plan to destroy the tree violates the Takings Clause, Due Process Clause, and Equal Protection Clause of the United States Constitution, as well as the Takings Clause of the Oregon Constitution. *See* Compl. (doc. 1). That same day, plaintiffs filed a motion seeking a preliminary injunction preventing defendants from cutting down the tree during the pendency of this litigation. *See* Pls.' Mot. TRO & Prelim. Inj. (doc. 5). After oral argument, this Court denied the motion for a preliminary injunction. *Elizondo v. City of Junction City*, 2016 WL 659082, at *6 (D. Or. Feb. 16, 2016), *aff'd*, 669 F. App'x 855 (9th Cir. 2016) (unpublished). Even though the Court did not award preliminary injunctive relief, defendants have not cut down the tree. Kurtz Decl. ¶ 2.

Defendants now move for summary judgment, arguing that no question of material fact remains as to plaintiff's due and process and equal protection claims and that plaintiffs' takings claims are not yet ripe.

## STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

PAGE 5 – OPINION AND ORDER

party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

I. *Due Process Claim*

Plaintiffs contend defendants' decision to cut down the tree deprives them of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law"). A procedural due process claim requires a threshold showing of a life, liberty, or property right. *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). This Court previously held that although plaintiffs do not own the tree outright, they nonetheless have a property interest in the tree. *See Elizondo*, 2016 WL 659082, at *3–*4. The summary judgment record contains no evidence that requires me to revisit that holding.

In the section of their summary judgment brief addressing due process, plaintiffs argue that the Due Process Clause requires defendants to demonstrate "actual necessity" before removing the tree. Pls.' Resp. Mot. Summ. J. at 10 (doc. 59). As a threshold matter, I note that it appears this argument invokes substantive rather than procedural due process. The Junction City Municipal Code defines "street trees" as "trees, shrubs, or bushes and all other woody vegetation on public rights-of-way within the City." Junction City Municipal Code § 12.35.030.

With respect to street trees, the City has the right to "remove, or cause or order to be removed, any tree or part thereof which by reason of its nature is injurious to public improvements[.]" *Id.* § 12.35.070(F). To the extent plaintiffs argue that defendants incorrectly deemed the tree injurious to public improvements, thereby failing to follow the Junction City Municipal Code, that argument is insufficient to support a constitutional claim. *See Voigt v. Savell*, 70 F.3d 1552, 1563 (9th Cir. 1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 95–96 (1984), for the proposition that a "claim against state officials that the officials failed to follow the requirements of a state statute is a state law claim").

It appears that plaintiff's argument is better characterized as a substantive due process claim, which is an attack on the "exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Plaintiffs pleaded a procedural due process claim, not a substantive due process claim. *See* First Am. Compl. at 4 (doc. 35). However, because the "touchstone" of both components of due process "is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), there are times when the line between procedural and substantive due process is blurred. *See, e.g., Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 957 (9th Cir. 1991) ("Where, as here, the plaintiff alleges that the denial of due process consists of an official's arbitrary action, a claim for violation of substantive due process is indistinguishable from a claim for violation of procedural due process."), *opinion vacated in part*, 987 F.2d 662, 663 (9th Cir. 1993). I therefore consider whether substantive due process requires defendant to demonstrate "actual necessity" before it can cut down the tree.

Plaintiffs cite a series of state-court cases in support of their "actual necessity" argument. But all the cases setting out that standard (or something similar) did so as part of their

development of state law. Those decisions have no bearing on the requirements imposed by the federal Due Process Clause. *See Voigt*, 70 F.3d at 1563 (rejecting "the incorrect assumption that state law informs the second prong of the procedural due process analysis").

In the Ninth Circuit, when a plaintiff alleges that a deprivation of property violated procedural due process, the question is whether "the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."[3] *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989) (quotation marks omitted), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311, 1325 (9th Cir. 1996). Under that standard, courts "look more carefully" at the state's reasoning if there is evidence that the decision "rest[s] upon inaccurate and stereotypic fears" — for example, when the decision appears to be tied to suspect classifications such as race or disability. *J.W. v. City of Tacoma, Wash.*, 720 F.2d 1126, 1131 (9th Cir. 1983). In the absence of a suspect classification, however, a plaintiff can prevail only by pointing to "grave unfairness" or "deliberate and arbitrary abuse of government power" in the decisionmaking process. *Sinaloa*, 882 F.2d at 1408.

In view of the entire summary judgment record, no factfinder could find that defendants were gravely unfair or arbitrarily abused their power when they decided to cut down the tree. At best, defendants' spotty enforcement of the City's visual clearance policy and rejection of plaintiffs' proposed alternatives to cutting down the tree could support the inference that defendants were unreasonable. Negligence is categorically insufficient to constitute a

---

[3] The is broad disagreement among the circuits regarding the specific test to be applied to substantive due process claims alleging deprivations of property, as distinct from claims alleging deprivations of life or liberty. *See* Note, Erica Chee, *Property Rights: Substantive Due Process and the "Shocks the Conscience" Standard*, 31 U. Haw. L. Rev. 577, 582–601 (2009) (describing the various tests).

deprivation under the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("To hold that injury caused by [negligent] conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law."); *Hudson v. City of Salem*, 2009 WL 1227770, *11 (D. Or. May 1, 2009) ("[M]ere negligence by government officials is insufficient to establish a substantive due process violation in this or any other context.") Defendants are entitled to summary judgment on plaintiffs' due process claim.

II.   *Equal Protection Claim*

Plaintiffs next assert defendants' decision to destroy the tree violates their right to equal protection under the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.") To succeed on their "class of one" claim, plaintiffs must demonstrate defendants "(1) intentionally (2) treated [plaintiffs] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011). The plaintiff bears the burden to prove each of these elements. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000) (per curiam). A district court applying rational basis review does not have "license . . . to judge the wisdom, fairness, or logic" of a municipality's choices. *Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (quotation marks omitted). Moreover, the government has no obligation to justify its decision;[4] rather, the plaintiff bears the heavy burden to "negative every

---

[4] Plaintiffs rely on cases exposing the standards for reviewing administrative decisions for the proposition that this Court can only uphold the City's decision on the basis of reasons articulated by the City at the time of the decision. Pls.' Resp. Mot. Summ. J. at 15. But plaintiffs do not seek review the decision of an agency, they challenge the judgment of the City Council, a legislative body. Such a decision may be upheld on a *post hoc* rationale. *See SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 481 (9th Cir. 2014) (characterizing "deference to post-hoc explanations" as "central to rational basis review"); *id.* ("This lowest level of review does not look to the actual purposes of the [governmental decision.] Instead, it

conceivable basis which might support [the differential treatment]." *Id.* at 1201 (quotation marks omitted).

Plaintiffs do not mount a *per se* challenge to the City's authority to remove street trees. Rather, they challenge the application of that authority to their particular situation. In a "selective enforcement" case like this, a plaintiff may create a triable issue of fact by demonstrating that the government's reasons for the decision were pretextual. *Squaw Valley Dev. Corp. v. Goldberg*, 375 F.3d 936, 945–46 (9th Cir. 2004), *overruled on other grounds by Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005). But such a claim will survive a motion for summary judgment only if there is evidence from which a jury could find either (1) that "the proffered rational basis was objectively false" or (2) that "that defendant actually acted on an improper motive." *Id.* at 946.

After carefully considering all the evidence in the summary judgment record, I conclude there is no triable issue of fact regarding pretext. I first consider evidence of improper motive. In *Squaw Valley*, the court considered whether there was sufficient evidence, at the summary judgment stage, that a regulatory board's enforcement decisions were motivated by "personal animus." *Id.* at 938. The court found that the executive director's aggressive behavior, statements, and decisions could support a finding of "actual hostility and antagonism" toward the plaintiff. *Id.* at 947. Plaintiffs cite *Squaw Valley*, but do not point to any evidence in the summary judgment record sufficient to support a finding that any defendant was hostile or antagonistic to plaintiffs. Indeed, the record is devoid of evidence suggesting that plaintiffs' problems with defendant "arose from anything but a disagreement over [defendants'] regulatory

---

considers whether there is some conceivable rational purposes" that the governmental entity could have had in mind when it enacted the law.")

practice." *Id.* at 948. The *Squaw Valley* court expressly held that such evidence was insufficient to show pretext at the summary judgment stage.

Because they have not identified sufficient evidence of improper motive, plaintiffs' equal protection claim can survive only if a jury could conclude the City's "proffered rational basis" for cutting down the tree was "objectively false." *Id.* at 946. The evidence in the summary judgment record cannot support such a conclusion. Here, plaintiffs largely recycle arguments made in support of their motion for a preliminary injunction. For example, plaintiffs reiterate that the City has built bulb-outs around other trees and fault the city for failing to cut down all trees that pose a visual-clearance hazard at intersections. However, as explained in the opinion and order denying the motion for a preliminary injunction,

> [P]laintiffs have not identified any other property owners whose trees pose *both* problems, *i.e.*, require an alternate construction design to accommodate their roots *and* are located at an intersection, thus blocking visual clearance. Even if the City made exceptions for other trees in the past, it rationally may decline to expend City resources to make an exception for a tree that poses a safety hazard. Put another way, plaintiffs have not identified similarly situated individuals who have been treated differently by the City.

*Elizondo*, 2016 WL 659082, at *6.

None of the new evidence submitted since the denial of the motion for a preliminary injunction changes the analysis. The record still contains no comparator examples of trees that pose both a visual-clearance problem at an intersection and would require a special construction accommodation to avoid root damage to the sidewalk. Indeed, the summary judgment record strengthens the City's position, as it now contains evidence that the City has removed one tree in connection with the Safe Routes to School Project and plans to remove another. Dugan Decl. Ex. B at 3; Kurtz Decl. ¶ 2 & Ex. 2 Apr. 28, 2017 (doc. 63). The record also contains evidence that the City has removed trees on 6th Avenue and elsewhere in connection with past ADA

PAGE 11 – OPINION AND ORDER

upgrades. *Id.* at 3–4. In sum, the summary judgment record does not support a finding that the City's proffered justifications for removing the tree are objectively false. *Cf. S. Pac. Transp. Co. v. City of L.A.*, 922 F.2d 498, 507–08 (9th Cir. 1990) ("Presumably, the zoning might have been more equitable, perhaps even more logical, but on its face, the ordinance displays no outward sign of irrationality.")

Plaintiffs' other arguments are red herrings. The City is under no obligation to wait for a visual-clearance complaint before removing a tree that undisputedly is within the "visual clearance triangle" for intersections as defined by the Junction City Municipal Code. Junction City Municipal Code § 17.95.090. The plaintiffs' subjective belief that the tree does not pose an actual visibility hazard does not change the fact that the tree is within thirty feet of the intersection and thus violates the City's visual clearance policy.

The City has supplied several rational bases for its decision to cut down the tree. The evidence in the summary judgment record cannot support a finding that the City's proffered reasons are objectively false or that the City actually acted on improper motive. Accordingly, defendants are entitled to summary judgment on plaintiffs' equal protection claim.

III. *Takings Claims*

Finally, plaintiffs assert destruction of the tree would violate the Takings Clauses of the United States and Oregon Constitutions, which prohibit the government from taking private property for public use without just compensation. *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); Or. Const. Art. I, § 18 ("Private property shall not be taken for public use . . . without just compensation[.]"); *see also Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 n.16 (9th Cir. 2007) ("The Takings Clause applies against states through the Fourteenth Amendment."); *Hoeck v. City of Portland*, 57 F.3d

781, 787 (9th Cir. 1995) ("Oregon law is identical to Fifth Amendment physical takings law") (quotation marks omitted).

Plaintiffs concede that because defendants have not yet cut down the tree, they cannot yet assert their takings claims. They appear to ask the court to stay consideration of those claims. I decline that request. "There are two independent prudential hurdles to a regulatory takings claim brought against a state entity in federal court." *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734–35 (1997). To clear those hurdles, a plaintiff must show that she has received a "final decision regarding . . . the property at issue" and that she has "sought compensation through the procedures that the state has provided for doing so." *Id.* at 735 (citations and quotation marks omitted). In *Daniel v. County of Santa Barbara*, 288 F.3d 375, 382 (9th Cir. 2002), the Ninth Circuit explained that the same ripeness test "applies to physical takings, but in a modified form." The first requirement "is automatically satisfied at the time of the physical taking," while the second requirement "remains the same." *Id.* Identical ripeness requirements apply to claims under Oregon's Takings Clause. *See Boise Cascade Corp. v. State ex rel. Bd. of Forestry*, 991 P.2d 536, 572 (Or. Ct. App. 1999).

Here, the tree has not yet been cut down. If that were the only ripeness issue, dismissal might be unwarranted because it is undisputed that defendants have reached a final decision regarding the tree. However, plaintiffs have not sought compensation from the state. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985)). Plaintiffs' takings claims are unripe and are therefore dismissed without prejudice.

PAGE 13 – OPINION AND ORDER

## CONCLUSION

Defendants' Motion for Summary Judgment (doc. 51) is GRANTED. Summary judgment is entered in defendants' favor on plaintiffs' due process and equal protection claims. Plaintiffs' takings claims are dismissed without prejudice. Plaintiffs' request for oral argument is denied as unnecessary.

Dated this 31 day of May 2017.

_____
Ann Aiken
United States District Judge